Good morning. May it please the Court. I am Robin Fife. I'm here representing Appellant Simon Martinez on his direct appeal from his judgment of conviction imposing 264 months of imprisonment. The appeal raises two issues. The first in the briefing is that the District Court erred in denying the motion to suppress evidence at a traffic stop based on Fourth Amendment and said the search was unreasonable. And second, that the District Court abused its discretion in denying the second attorney's motion to withdraw just weeks before the sentencing hearing. This morning, I intend to address the second issue first and to focus my comments there. And in considering the motion to withdraw, the Court was obligated to consider the timing extent, the timing of the motion, and the extent of the conflict, and an inquiry that fleshed out those grounds. As to the timing, the District Court's focus was on the overall case life, which involves several co-defendants and a number of different ramifications. In no way was that delay, that length of time, attributed to Mr. Martinez personally. And I don't, the case law doesn't support having that treated against Mr. Martinez in this instance. Instead, the relevant focus of time was the when the relationship broke down in  Could I just walk back a little bit about the timing of the sentencing? Does it matter at all that the delay also would have delayed the sentencing for the other co-defendants, or should that not figure in? Thank you. I believe that it's relevant, but it was given too much weight in this instance. There were co-defendants anticipated to testify, so there would have been some inconvenience there. It didn't rise to the level of the relationship between Mr. Martinez and his attorney and the ability to effectively build mitigation. But also, the court invited counsel to continue the sentencing hearing, said that if he needed more time to gather the evidence or work with his attorney, that he would continue it for that reason, and also for that reason. So while it's relevant, to get back to your question, I believe it was given undue weight, and that in that sense the District Court abused its discretion. I'm sure that you're going to get to it, but could you really pinpoint for us what you think is the breakdown between Mr. Martinez and his counsel? The District Court had asked Mr. Martinez about what had happened, and Mr. Martinez has a very heartfelt colloquy in there where he says he's facing much to the rest of his life, he's not trying to delay the proceedings. My read of it is that the pre-sentence report came out, counsel objected, and things got worse, and counsel objected, and things got worse for Mr. Martinez. The responses, some of the evidence was corrected according to Ms. Martinez's request, but the recommendation got worse, the numbers got higher. And so at that same time, the record's not crystal clear, but there was difficulty communicating, and I believe that was related to a move, but that's also related to some misconduct on Mr. Martinez's part, and he was concerned how that might impact his sentencing, and that was also weighing heavily on his mind. There was a question in the record about whether acceptance would still be given, and ultimately he did indeed get his three points for acceptance and responsibility. So it was a combination of all that coming together and difficulty. I was still kind of having trouble, I have to admit, putting all that together and then figuring out. I understand why he would be disappointed, you know, what pretrial probation does once they start responding, but how does that relate to the counsel, and where did his miscommunication or lack of communication with counsel come in? Because that's what I'm really looking at for the breakdown in terms of trying to benchmark whether district court made a mistake here. It's the breakdown in trust that happened because of that communication, the events that happened. Counsel's defending me, the situation's getting worse, I can't get a hold of my attorney, I'm going to spend the rest of my life in prison, he's not listening to me, he doesn't care. And the district court had found that those disagreements about the approach was less important because of sentencing, and I submit that it's more important at sentencing because the job is to mitigate. So the what evidence was presented and how it was presented is what they were disagreeing about, but there was no trust where counsel could guide his client truly in facing the district court, where the evidence at sentencing, it wasn't the evidence that mattered. The judge had said, it doesn't matter how you slice it, your offense level's the same. So it's... Is Mr. Martinez stating that he said, thanks to his counsel, that counsel didn't then say to the court in terms of his sentencing to try to mitigate it? No, Your Honor. And it's, I understand the court's not getting the responses. It's because it is a, it's a feeling based thing. It's a, you need to trust your attorney to say, hey, we need to not focus this here on nitpicking this evidence. I need you to, you know, and get with your client how we have a relationship. I know you want what's best for me. We need to mitigate, we need to allocute. So that's in that, I submit that it's not a, it's not a hard, crystal clear. So then where's the, where's the harm? What happened at sentencing? Got 264 months. Yes, I understand that. And that's plenty of harm. Yeah. But can you point to a specific thing that counsel wants the motion to withdraw was denied, that it happened as a result of counsel continuing that affected your client's sentence? It would be that if there had been adequate communication and trust, then he would have been able to present, he would have communicated mitigation to his attorney. And that could have been presented and the district court wouldn't have dropped the hammer. Well, he, he got credit for acceptance, correct? He did. The district court walked through all the guidelines and essentially went in Martinez's favor, but gave him the sentence exercising his discretion that he was going to anyway. So in terms of the guideline calculation, no, sir, it didn't matter. But it did matter in terms of the softer factors and the variances and how that was treated for Mr. Martinez. And I don't know that it would have made a difference, but it could have. I don't know that I indicated I intend to reserve two minutes for rebuttal, but I do, and I don't intend to address directly the motion to suppress absent questions, and I will reserve the remainder of my time for rebuttal. Thank you. Okay, thank you. Mr. Paskett. Thank you, Your Honor. May it please the court. My name is Justin Paskett. I'm an assistant United States attorney representing the government in this matter. And I will begin addressing the second issue in response to some of the statements that counsel made and questions from this court. I would like to start just outlining, as this court ruled in United States v. Riviera-Corona, there are three factors that a court is to consider when a request for substitution of counsel is made involving an appointed attorney. The first is the timeliness of the substitution motion and the extent of resulting inconvenience or delay. The second is the adequacy of the district court's inquiry into the defendant's complaint. And the third is whether the conflict between the defendant and his attorney was so great that it prevented an adequate defense. In this case, the first matter of timeliness of the motion, though timeliness was not a particular issue, there was discussion on the record by the district court about resulting inconvenience or delay. The district court noted that his calendar was very busy. It may necessitate getting a different judge if there's a continuance on the basis of new counsel appointed, as well as the discussion of the impact of the co-defendants as there were two co-defendants that would be testifying at the defendant's sentencing. Counsel for the appellant raised the issue that there was too much weight given to that first factor of delay. I would just respond that the court didn't assign a specific amount of weight. There was some degree of discussion, as was appropriate, to make a record that he was, that the court was correctly reviewing each of the factors to be considered. But in terms of weight given, there was no statement made that would have in any way provided an evaluation that more was given to one factor than the next. I would say with regard to the adequacy of the court's inquiry, this is where the court, being a very experienced district court, did a very lengthy series of questions, inquiring not just yes or no questions, but open-ended questions about the nature and extent of the disagreement, ultimately determining that it was a strategic disagreement. And the nature and extent of that is laid out very clearly, that what had happened in the pre-sentence report, the defendant was found with large sums of cash on his person and in the Airbnb that was searched. The pre-sentence investigation report had converted that cash to drug quantities on a conversion theory that they were the proceeds of drug debts. The defendant's concern that he expressed to the court, both that had been in filings for continuances as well as was discussed at this hearing, was that he could account for that cash in other ways from casino winnings as well as from an automobile accident where he had had an insurance claim. He had asked his attorney to do some things with regard to obtaining records, potentially tax records or witness records, from the casino and some records from the payout of the insurance policy. The district judge, in determining that that was the issue and that the defense counsel believed when it was either not necessary or that he would be unable to get some of that information due to the time that the defendant had requested it, the district judge provided multiple different solutions to that problem. One of which was he would provide an order that the tax records from the casino could be turned over if they were having difficulty getting them. He would assist defense counsel in getting those. He also provided that defendant could provide testimony that he would give adequate weight as to the origination of some of those cash proceeds and that they were not, in fact, all drug proceeds and that that cash conversion was inaccurate on that basis. That was the main crux of the disagreement between defense counsel and the district court did a very good job in evaluating and drawing out that information and then providing solutions that would not necessitate any change of counsel, would accomplish what the defendant wanted. This court asked if there was any harm as a result, asked appellant's counsel, and I would respond. The record is actually quite clear at the sentencing. The district court makes a record, and that's on page 50 of the excerpt of the record, that there was testimony from these co-defendants about the volume and quantity of controlled substances that they had firsthand seen during their endeavors together in this drug trafficking organization that were in the possession of the defendant on specific dates and times, and the court made a record that whether he went with the cash conversion was immaterial because there was sufficient credible testimony that would be actually more than the base offense level that was calculated by U.S. probation using the cash conversion merely by calculating what had been testified to by co-defendants. So ultimately it became a moot issue what the defendant was trying to get, but the court made a clear record that there was plenty of additional information. In fact, it could have been a higher guideline calculation. So there was no harm is the short answer to the question. And the defendant's own statements, and this gets into the third factor, the extent to which there was a conflict. The defendant made several statements when he addressed the court at the hearing for new counsel that very clearly established communication had not broken down. They were still communicating, and in fact there was to some degree an expression of lamenting the fact that he wanted to get new counsel because his current counsel, Mr. Dominick, had represented him, well knew his case, and there was no appearance in court on the record between the two of them communicating. They took several recesses during that time period. He even used the word strategy in describing what their differences were. And so clearly a strategic difference is not sufficient to remove counsel. There was ultimately no harm, and the record's very clear that the court evaluated the three criteria or considerations for substituting counsel when it was appointed. Is there any evidence that the motion to withdraw was done for the purpose of delay? Your Honor, I don't believe there is, and I don't believe that was the case. At least in my review of the record, the record seems to indicate that that motion was filed because of this kind of disagreement on this issue of what could be obtained or could not be obtained. Judge Windmill didn't say anything about, I think, your filing this motion for purposes of delay. No, there was no indication, and I wouldn't argue that it was merely a dilatory tactic or anything like that. I don't think that's what the case was here. I think there was some difference of opinion or strategic approach between counsel and the defendant. But ultimately, and there was some discussion by both counsel and defendant in the record about defendant had made some subsequent requests that were in writing, and they had been delayed in getting to counsel, and so his response was difficult for him to, there's kind of a compressed timeline based on their communication or some delay in their communication. On that issue, it's very apparent to the government that the district court followed the appropriate course and considerations and that this court should affirm as to issue two. I will briefly address issue one. Your friend on the other side didn't address that issue. Okay. You can if you want. I would just note, although it was not addressed, I think it is appropriate to note that this is a case with regard to the suppression that is very straightforward. There were over eight months of investigation, over ten individuals who provided information to law enforcement that was very specific. Much of it corroborated both by their investigation as well as some of the other sources of information corroborated one another. Many of them, the majority of them had firsthand knowledge. Law enforcement had executed search warrants and seized over 56 pounds of methamphetamine and had intercepted or reviewed recorded jail phone calls between the defendant and his girlfriend while she was incarcerated after the warrants had been executed where he had discussed them. They had information that he always had guns and drugs on his person. Law enforcement had probable cause in the intent to arrest Mr. Martinez on December 17th, and they had reasonable suspicion to search the vehicle for drug trafficking based on that eight-month investigation. Thank you. Thank you, Counsel. Ms. Fife. Thank you. I agree with the government to the extent that Judge Windmill solicited and received good responses from Mr. Martinez, but I view the crux differently, that the focus was on the competency. Could they communicate about a topic? Could they communicate about evidence, tax records, and where the money came from? And it missed the core of the issue, which is the trust between attorney and client. And listening to the government's response, it's correct that it probably did not affect the guideline calculation at all and that as time has gone forward with the increasing since Booker, that 3553A and that consideration is more and more and more important, and that was completely missed outside of the nature of the offense simply by the lack of trust. So, Counsel, do you equate that lack of trust with a complete breakdown in communication? I do. Effective communication, Your Honor. An atmosphere of distrust, it's not correct to focus on whether or not Mr. Martinez refused to speak with him. He was not just courteous. He didn't call him names. They could communicate. He didn't trust him. He didn't think he was helping him, and he was scared, and that was the nature of the breakdown. But he never actually stopped communicating with Mr. Dominick, correct? No, he did not. My position is that it's not required. It's the nature of the communications and whether or not they can continue. The final topic I didn't mention was it was erred to treat the second motion as equivalent to the first, that he'd gotten one disagreement and then a second. There are different motions. There are different issues. And I ask the Court to reverse the judgment of conviction. Thank you. All right. Thank you, Counsel. This matter is now submitted.
judges: HAWKINS, McKEOWN, ALBA